Filed 5/28/13  P. v. Rivas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B239891 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA092842) |
| v. | |
| JUAN A. RIVAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tia Fisher, Judge.  Affirmed.

Lori-Ann C. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Juan A. Rivas appeals from a judgment following convictions for two counts of committing a lewd act upon a child. He contends there was insufficient evidence to support the convictions. He further contends he was denied a fair trial because of evidentiary rulings by the trial court that restricted his cross-examination of prosecution witnesses and limited the testimony of his expert witness. Finding no error, we affirm.

## STATEMENT OF THE CASE

Following a mistrial, a jury in the second trial found appellant guilty of two counts of committing a lewd act upon a child under the age of 14 years, on or between February 7, 2006 and September 22, 2008 (Pen. Code, § 288).[1] After appellant was sentenced to a total of 10 years in state prison, he timely filed a notice of appeal.

## STATEMENT OF THE FACTS

I.      Prosecution's Case-In-Chief

A.      Testimony of Giselle M.

The victim, Giselle M., testified that appellant, who is her uncle, molested her on numerous occasions throughout the time she was in second, third, and fourth grade in Covina. The molestation stopped when her mother married and Giselle's family moved to Fontana. Giselle testified she did not realize appellant was sexually molesting her until she watched a sex education video at school. She reported the molestation to her stepfather and mother, and shortly thereafter, to David Johnson, the counselor at her Fontana school. Giselle testified appellant

---

[1]      All further statutory citations are to the Penal Code, unless otherwise indicated.

molested her in his bedroom, while giving her piggyback rides, in a swimming pool, and when they went camping.

### 1. Bedroom Incidents

Giselle testified that her mother would drop her off at appellant's house every morning, and appellant would take her to school. She would knock on appellant's bedroom door, open it, and ask him to take her to school. On numerous occasions, appellant would motion her to come in and ask her to lie in bed with him. Giselle would do so, and appellant would put his arm around her, pull her closer, and press his body against hers. Although appellant was clothed, Giselle could feel his hard penis on her buttocks. It made her uncomfortable. She testified these incidents occurred "a lot of times" between second and fourth grade.

### 2. Piggyback Ride Incidents

Giselle testified that on numerous occasions, appellant would touch her vagina through her clothes while giving her piggyback rides to the mailbox. During these piggyback rides, appellant had his arms behind his back and his hands underneath her buttocks. Giselle felt uncomfortable and told him to stop. Appellant responded by asking Giselle to "pinky promise" him that she would not tell anyone.

### 3. Swimming Pool Incidents

Giselle testified that on several occasions when she went swimming with appellant in the pool at his house, appellant would squat down in the pool with his legs apart and have her sit on his lap. Appellant would then move her "back and forth." Giselle could feel appellant's hard penis on her buttocks. This would happen only when Giselle and appellant were alone.

3

### 4. Uncharged Camping Incident

Giselle testified that she went on a camping trip with appellant and his family, and his wife's side of the family. When Giselle fell asleep, appellant carried her to her tent. Inside the tent, appellant put his hand underneath her clothes and touched "the skin of [her] vagina." Giselle was scared. She pushed appellant's hand away and said out loud, "Tio." Appellant shushed her and told her, "Everything is okay." Giselle testified that they were alone in the tent.

The prosecutor played a recorded interview of Giselle, conducted by Susy Flores of the Children's Advocacy Center on December 2, 2010. Giselle's statements during the interview were consistent with her trial testimony. Giselle also stated that almost every time appellant molested her, no one else was around.

### B. Testimony of Giselle's Parents

Giselle's stepfather and mother both testified. They recounted that in March of 2010, Giselle informed them about appellant's molestation. They did not immediately go to the police because the allegations were serious, and they wanted to make sure Giselle was telling the truth.

### C. Testimony of David Johnson

Johnson testified he is trained and mandated to report child abuse to Child Protective Services. As a mandated reporter, Johnson gathers as many facts as he can about the alleged abuse, but he does not investigate the incidents. Johnson testified he first met Giselle when she was in the fifth grade. On April 16, 2010, Giselle came to Johnson's office with her best friend and told him that appellant had sexually abused her. Giselle told Johnson about three incidents -- a camping incident, a swimming pool incident, and a piggyback ride incident. Giselle stated that appellant molested her between the second and fourth grade. She also told Johnson that appellant made her "pinky swear" not to tell anyone.

4

II.    Defense's Case-in-Chief

A.    Testimony of Appellant

Appellant testified on his own behalf.  He denied ever touching Giselle in a sexual way.  Appellant testified he never invited Giselle into his bedroom or bed, although he admitted that sometimes Giselle would come into his bedroom while he was lying in bed.  Appellant admitted he gave Giselle piggyback rides between 2006 and 2008, but stated that he carried Giselle with his hands in front of his body and held her legs.  He denied touching Giselle's vagina while giving her piggyback rides.  He also stated that every time he gave Giselle a piggyback ride, his daughter, Jasmine, was present.  Appellant testified he went camping with Giselle, but denied touching her vagina during the trip.  He admitted he carried Giselle and placed her in the tent.  Appellant also testified that he was never in the swimming pool alone with Giselle, as Jasmine was always present.  He denied ever pressing Giselle against his penis in the pool, or doing any sort of thrusting or pushing motion against her.

On cross-examination, after being impeached with prior inconsistent statements, appellant admitted there were times when he was alone with Giselle. He also testified that in late 2008, Giselle became more distant and less affectionate toward him.

B.    Testimony of James Guy Kent

James Guy Kent, a forensic kinesiologist, testified as an expert on human movement and biomechanics.  Dr. Kent opined that it was "highly unlikely" that appellant molested Giselle while giving her a piggyback ride because appellant had a restricted range of motion in his right arm and shoulder.  Due to his restricted range of motion, appellant would have been unable to hold Giselle under her buttocks.  After the trial court sustained an objection to a line of questioning by

defense counsel, the judge asked Dr. Kent if the actions described by the victim were within appellant's physical capacity. Dr. Kent opined: "I don't believe that it's in his physical capacity as I understand the events to have occurred." On cross-examination, Dr. Kent admitted he did not examine appellant around the times when the crimes were committed for any range of motion or joint issues.

C.      Testimony of Officer Brandon Avila

Officer Avila was a police officer for the Covina Police Department when he interviewed Giselle regarding the molestation. He prepared a report based on the interview. Officer Avila testified that in the report, he "quote[d] certain things that she said verbatim word-for-word," but "paraphrase[d]" or "sometimes use[d] [his] own words to describe" what she was telling him. Officer Avila testified that Giselle did not use the words "thrusting," "erect," vagina," or "massage."

D.      Testimony of Yolanda Nieto

Yolanda Nieto, appellant's sister-in-law, testified she went on the camping trip with appellant and Giselle. She testified that the adults were in a seating area, and that Giselle was sitting on appellant's lap, falling asleep. The other children were in a tent. Nieto saw appellant carry Giselle to the front of the tent and put her down. Appellant made other children get out of the tent and began fixing blankets for them. After appellant fixed the blankets, the children went into the tent with Giselle. Appellant then returned to the seating area. On cross-examination, Nieto admitted she did not watch appellant afterwards.

E.      Testimony of Jasmine Rivas

Jasmine Rivas, appellant's daughter, testified that she was present every morning when Giselle was dropped off at appellant's house. She admitted, however, that there were times when she was in her room and could not see Giselle getting ready for school. Jasmine also testified she was present in the swimming

6

pool with Giselle every time appellant was swimming with them. She recalled seeing appellant give Giselle piggyback rides a few times. During those times, she saw that appellant had his hands on Giselle's legs. Jasmine also remembered going on a camping trip with Giselle, appellant and other relatives, but she could not recall anything specific about the trip.

## DISCUSSION

Appellant contends his convictions should be reversed because (1) there was insufficient evidence to support the jury's finding that he had the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or the child in any of the charged incidents, and (2) he was denied a fair trial because the trial court's evidentiary rulings improperly restricted his cross-examination and limited his defense case.

### A. Sufficiency of the Evidence

"In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution

7

of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Finally, in determining whether a defendant had the specific intent to commit a lewd act on a child in violation of section 288, "'[t]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent.' [Citations.] Other relevant factors can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation]." (*People v. Martinez* (1995) 11 Cal.4th 434, 445.)

The evidence below was sufficient to support the convictions. Giselle testified that appellant touched her vagina on more than two occasions. She also testified that he rubbed or pushed his hard penis against her buttocks on numerous occasions. The nature and manner of appellant's conduct showed that he acted with an improper sexual intent. Appellant touched the victim's sexual organs repeatedly and on several occasions, while aroused. He committed the acts when he was alone with the victim -- who was his niece -- and urged her to keep the acts secret. In light of this testimony, the jury could reasonably conclude that the acts were committed with the requisite intent to arouse sexual desire.

B.     Evidentiary Rulings

Appellant contends he was denied a fair trial by the trial court's evidentiary rulings. The challenged rulings fall into three broad categories: (1) rulings that restricted the cross-examinations of prosecution witnesses, Giselle, her mother, and

8

her school counselor, Johnson, (2) rulings that restricted the testimony of defense expert witness Dr. Kent, and (3) a miscellaneous ruling in favor of the prosecution.

1.      Restrictions on Cross-Examination

Appellant contends the trial court abused its discretion in precluding him from asking Giselle and her mother whether the family had filed a civil lawsuit against appellant, and from impeaching her with Officer Avila's report. He also contends the trial court erred by precluding him from asking Johnson whether Giselle had been "referred to your office" for behavioral problems and from using the word "investigate" to describe Johnson's conduct following an allegation of child abuse. Appellant contends these restrictions denied him his due process and confrontation rights.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' . . . It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier . . . , 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' [Citation.]" (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678-679; accord, *People v. Harris* (1989) 47 Cal.3d 1047, 1091.)

9

Here, the trial court acted within its discretion in limiting the cross-examinations of Giselle and her mother. The court precluded any questioning about a civil complaint against appellant because defense counsel lacked a good faith belief any such complaint had been filed. The court also properly cut short defense counsel's attempt to suggest that Giselle had used the words "thrusting" and "erect" to describe the molestation to Officer Avila, when counsel knew the officer had paraphrased Giselle's testimony by using those words in his report.

With respect to Johnson, the court properly found no factual basis to ask Johnson whether Giselle had been referred to him for behavioral issues. Johnson had previously testified in an Evidence Code section 402 hearing that he was unaware of any behavioral incidents involving Giselle. Similarly, the court acted within its discretion in precluding defense counsel from characterizing Johnson's attempts to gather facts about a child abuse allegation as "investigat[ing]." Johnson testified he did not investigate alleged child abuse, but merely attempted to gather sufficient facts about an allegation to report it to Child Protective Services. The trial court properly refused to allow defense counsel to mischaracterize this conduct by describing it as "investigat[ing]." In short, the trial court acted within its discretion in limiting the cross-examinations of Giselle, her mother, and Johnson. Accordingly, appellant was not denied his due process or confrontation rights.

2.     Limits on Testimony of Defense Witness

Appellant contends he was denied a fair trial because the court impermissibly limited the testimony of his expert witness, Dr. Kent, (1) by excluding a photograph of a police hold or stronghold, (2) by precluding Dr. Kent from describing a demonstrative exhibit (a three-dimensional reconstruction of the

10

piggyback ride), and (3) by limiting Dr. Kent's testimony on the ultimate issue in the case. We discern no reversible error.

We find no error in the court's exclusion of a photograph depicting what defense counsel characterized as a "stronghold . . . used to limit the movement of the person held, in particular their hand movements." The court, viewing the photo, characterized it as a police restraint hold and excluded it as irrelevant. Neither below nor on appeal does appellant demonstrate how the exclusion of this photograph precluded him from effectively presenting the testimony of his expert or defending against the charges.

Dr. Kent testified to the preparation of the demonstrative exhibit, and stated it depicted "a three-dimensional reconstruction . . . under the conditions that have been described by the victim." Defense counsel then asked, "And can you give us more of a description of what we're looking at?" Dr. Kent replied, "Well, that's what I was describing." The trial court precluded further questioning, stating "[e]verybody can see it." On this record, Dr. Kent was able to sufficiently describe the demonstrative exhibit. Moreover, appellant has failed to show that any limitations imposed on Dr. Kent's descriptions of the exhibit was prejudicial.

Dr. Kent went on to opine that "it's more probable than not that . . . for a variety of foundational reasons that during these piggyback rides that the allegations of a molestation are highly unlikely." When asked whether the actions described by the victim were within the physical capacity of appellant, Dr. Kent stated, "I don't believe that it's in his physical capacity as I understand the events to have occurred." Thus, Dr. Kent was permitted to give his expert opinion that appellant could not have committed the acts as described. On this record, even were we to find some limitations on Dr. Kent's testimony erroneous, we would deem any error harmless beyond a reasonable doubt.

11

3.     Miscellaneous Ruling in Favor of Prosecution

Appellant contends the trial court impermissibly allowed the prosecution to cross-examine Jasmine about the swimming pool and camping incidents, when Jasmine testified on direct examination only about the alleged bedroom incidents. As defense counsel acknowledged, however, Jasmine was called to establish that Giselle "was not alone with [appellant] during any period of time." This placed in issue whether Jasmine was present on all the occasions at which appellant allegedly molested Giselle. The court was within its discretion in permitting Jasmine to be questioned on the scope of her presence at those events at which appellant allegedly molested Giselle. In any event, appellant has failed to identify how he was prejudiced by the ruling.

In short, appellant was not denied a fair trial by the trial court's evidentiary rulings.[2]

---

[2]     Appellant suggests it was improper for the trial court to read the transcript of the prior trial. We disagree. Here, both the prosecutor and defense counsel agreed that the trial judge could read the transcript of the prior trial. Moreover, provided that the trial judge's rulings are made upon facts and evidence presented in the second trial, nothing precludes the judge from preparing for a second trial by reviewing the transcripts of the first trial.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


SUZUKAWA, J.

13